**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON**

**CIVIL ACTION NO. 16-260-DLB**

**REBECCA JEAN DUNCAN**                                              **PLAINTIFF**

**vs.**                    <u>**MEMORANDUM OPINION & ORDER**</u>

**NANCY A. BERRYHILL, Acting
Commissioner of Social Security**                                     **DEFENDANT**

\*\*\*    \*\*\*    \*\*\*    \*\*\*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and the parties' dispositive motions, and for the reasons set forth herein, will affirm the Commissioner's decision.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

On December 12, 2013, Plaintiff Rebecca Jean Duncan applied for supplemental security income (SSI) and disability insurance benefits (DIB), alleging disability beginning on May 13, 2013. (Tr. 177-89). Plaintiff was fifty-one (51) years old at the time of filing. (Tr. 177). Plaintiff alleged that she was unable to work after a fall caused a bulging disc against nerves in her back. (Tr. 232).

Plaintiff's application was denied initially, and again on reconsideration. (Tr. 112-15; 119-25; 126-33). At Plaintiff's request, an administrative hearing was conducted on September 18, 2015 before Administrative Law Judge (ALJ) Ben Ballengee. (Tr. 31-63). On December 23, 2015, ALJ Ballengee ruled that Plaintiff was not entitled to benefits.

1

(Tr. 11). This decision became the final decision of the Commissioner on October 7, 2016, when the Appeals Council denied Plaintiff's request for review. (Tr. 1-8).

Plaintiff filed the instant action on November 8, 2016 alleging the ALJ's conclusions "are not supported by substantial evidence and are contrary to law and regulation." (Doc. # 2). The matter has culminated in cross-motions for summary judgement, which are now ripe for adjudication. (Docs. # 11 and 13).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Colvin v. Barnhart*, 475 F.3d 727, 729 (6th Cir. 2007). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, the Court must affirm the Commissioner's decision, as long as it is supported by substantial evidence, even if the Court might have decided the case differently. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). If supported by substantial evidence, the Commissioner's findings must be affirmed, even if there is evidence favoring Plaintiff's side. *Listenbee v. Sec'y of Health & Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781-82 (6th Cir. 1996).

To determine disability, the ALJ conducts a five-step analysis.  Step One considers whether the claimant can still perform substantial gainful activity; Step Two, whether any of the claimant's impairments, alone or in combination, are "severe;" Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform her past relevant work; and Step Five, whether a significant number of other jobs exist in the national economy that the claimant can perform.  The burden of proof rests with the Plaintiff on Steps One through Four.  As to the last step, the burden of proof shifts to the Commissioner to identify "jobs in the economy that accommodate [Plaintiff's] residual functional capacity."  *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *see also Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994)**.**

### B. The ALJ's Determination

At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since May 13, 2013, the alleged onset date of disability.  (Tr. 16).  At Step Two, the ALJ determined that Plaintiff has the following severe impairment: degenerative disc disease and obesity (in combination).  (Tr. 16).  The ALJ also determined that Plaintiff has the following non-severe impairments: hypertension, hyperlipidemia, esophageal reflux, lymphadenitis, episodic upper respiratory infections, episodic pharyngitis, episodic sinusitis, left foot injury, left breast mass with normal imaging, chest pain with normal cardiac testing, neurodermatitis, fatigue, diaphoresis, rib pain, and depression with anxiety.  (Tr. 17-18).  At Step Three, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (Tr. 18-19).

At Step Four, the ALJ found that Plaintiff possesses the residual functional capacity (RFC) to perform work at the light exertional level, as defined in 20 C.F.R. § 404.1567(b) and 20 CFR § 416.967(b), with the following limitations: "She can occasionally climb ladders, ropes, and scaffolds. She can frequently stoop and frequently crawl. She should never be exposed to unprotected heights or moving mechanical parts. She can occasionally be exposed to humidity and wetness and extreme cold." (Tr. 19).

Based upon this RFC and relying on the testimony of a vocational expert (VE), the ALJ concluded that Plaintiff was unable to perform her past relevant work. (Tr. 24). The ALJ also acknowledged that Plaintiff was closely approaching advanced age at all times material to his decision. *Id.* However, at Step Five, the ALJ concluded that there were jobs that existed in significant numbers in the national economy that the Plaintiff could have performed, and that Plaintiff was not under a disability, as defined in the Social Security Act. (Tr. 24-25).

**C.    Analysis**

Plaintiff advances three arguments in her Motion for Summary Judgment. (Doc. # 11-1). First, Plaintiff claims that the ALJ erred in assessing her credibility and discounting her subjective complaints. *Id.* at 4-7. Second, Plaintiff argues that the ALJ erred in weighing the medical opinion testimony. *Id* at 7-9. Specifically, Plaintiff contends that the ALJ should have given controlling weight to the opinions of her treating sources, Dr. Kiefer and Dr. Golden, and that the ALJ should not have given great weight to the opinions of non-examining sources, Dr. Conger and Dr. Perritt. *Id.* Third, Plaintiff generally alleges that the ALJ's decision "is not supported by substantial evidence because the ALJ's decision is not based on the entire record." *Id.* at 1. These arguments will be addressed

4

in turn.

### 1. *The ALJ did not err in assessing Plaintiff's credibility.*

Although relevant to the RFC assessment, a claimant's description of his or her symptoms is not enough, on its own, to establish the existence of physical or mental impairments or disability. SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016). When evaluating a claimant's symptoms, the ALJ must determine whether there is an underlying medically determinable impairment that could be reasonably expected to produce the alleged symptoms. *Id.* Once that is established, the ALJ must "evaluate the intensity and persistence of those symptoms to determine the extent to which the symptoms limit the individuals' ability to perform work-related activities." *Id.*

When the Plaintiff's complaints regarding the intensity and persistence of his or her symptoms are unsupported by objective medical evidence, the ALJ must make a credibility determination "based on a consideration of the entire case record," including laboratory findings, information from treating physicians, Plaintiff's complaints of symptoms, and other relevant evidence. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (quoting SSR 96-7p, 1996 WL 374186, at *4 (July 2, 1996). After making a credibility determination, the ALJ must explain that decision with enough specificity and clarity "so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 2016 WL 1119029, at *9. "[B]lanket assertions that the claimant is not believable will not pass muster, nor will explanations as to credibility which are not consistent with the entire record and the weight of the relevant evidence." *Rogers*, 486 F.3d at 248. Once the ALJ has made the credibility determination, the reviewing court must give great weight and deference to that

conclusion. *Id.*

Plaintiff complains that the ALJ discounted the severity of her impairments and erroneously doubted her credibility. (Doc. # 11-1). However, the record contradicts these assertions. At Step Four, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely credible." (Tr. 20). The ALJ further explained that Plaintiff's testimony regarding her symptoms and limitations was inconsistent with the medical evidence:

> Treatment notes document continued subjective complaints of pain, waxing and waning, in excess of objective findings. Treatment notes consistently document a normal gait and station as well as essentially normal range of motion. The claimant testified that she was still getting used to the spinal cord stimulator, but treatment notes document significant improvement in pain and related symptoms with the trial and permanent installation of the spinal cord stimulator. There is no persuasive evidence to support the claimant's testimony that she experiences pain at a level of eight or nine on a scale of one to ten, or that she is unable to bend, stoop, squat or reach or that she has problems with dropping things when using the right arm and trouble writing.

(Tr. 21). Further, the ALJ found that although Plaintiff reports to take medication for her conditions, "there is no indication of regular need for medication or dosage changes." (Tr. 22). The ALJ also noted there was "no documented evidence of nonextertional pain seriously interfering with or diminishing the claimant's memory or ability to concentrate." *Id.*

Additionally, the ALJ determined Plaintiff's subjective complaints were inconsistent with her activities of daily living. Plaintiff "reported that she is able to perform basic hygiene and grooming, prepare simple meals, perform household chores, manage

6

finances, shop, and drive a car." *Id.* Based on these discrepancies between Plaintiff's testimony and the record as a whole, the ALJ reasonably concluded that Plaintiff was less than credible and that Plaintiff's limitations "are best characterized as moderate." (Tr. 21).

In his credibility determination, the ALJ referred to the lack of a specific medical event on the alleged onset date of disability as further evidence that Plaintiff's testimony is not supported by objective evidence. (Tr. 22). Plaintiff claims that the ALJ's finding regarding the alleged onset date of disability "is clearly erroneous and not supported by the record." (Doc. # 11-1 at 6-7). The record refutes Plaintiff's allegation. There is no evidence in the record that a medical event occurred on the alleged onset date of disability, May 13, 2013. The record indicates that Plaintiff's employment was terminated on that date, but gives no indication that a specific medical event occurred on that date. (Tr. 232). The ALJ did not clearly err by noting the lack of a specific medical event on the alleged onset date of disability.[1]

Furthermore, the ALJ acknowledged evidence that supported Plaintiff's claim of credibility, primarily her work history. (Tr. 22). The ALJ is required to consider Plaintiff's work history when weighing Plaintiff's credibility. 20 C.F.R. § 404.1529; 20 C.F.R. §

---

[1] The Court notes that earlier in the hearing decision, the ALJ erroneously stated that no specific medical event occurred either on April 25, 2013 or May 13, 2013. (Tr. 20). The record provides multiple references to Plaintiff receiving medical care on April 25, 2013 after being injured by a fall at work. (Tr. 357, 359, 488-97). But, this error is harmless and does not discount the rest of the ALJ's credibility determination. The Court will not reverse a decision for a factual error if "there remains substantial evidence supporting the ALJ's conclusions on credibility and the error does not negate the validity of the ALJ's ultimate credibility conclusion." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012) (quoting *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1162 (9th Cir. 2008)). The ALJ's assertion that no specific medical event occurred on April 25, 2013 is stated only once in the decision and is not directly relied on to question Plaintiff's credibility. (Tr. 20). Because the ALJ's credibility determination is supported by substantial evidence as previously described, this single factual error is harmless and does not warrant reversal.

416.929. Plaintiff reported consistent work history from December 1994 up until the alleged date of disability, May 13, 2013. (Tr. 217-25). While Plaintiff's consistent work history weighs in her favor, work history is only one factor which the ALJ must consider. 20 C.F.R. §§ 404.1529; 416.929. In this case, the ALJ found "that the preponderance of the medical evidence of record outweighs the claimant's consistent work history." (Tr. 22). Therefore, the ALJ concluded that Plaintiff's statements regarding the intensity, frequency, and limiting effects of her symptoms were not entirely credible. Having reviewed the ALJ's credibility assessment, which carefully detailed the inconsistencies between Plaintiff's daily activities, subjective complaints of pain, and the objective medical evidence, the Court finds no error.

### 2. *The ALJ did not err in weighing the medical opinion testimony.*

In social security disability cases, medical evidence may come from treating sources, non-treating sources, and non-examining sources. 20 C.F.R. § 404.1527. A treating source is the claimant's "own acceptable medical source who provides [claimant], or has provided [claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [claimant]." *Id.*; *see also Abney v. Astrue*, Civ. No. 5:07-394-KKC, 2008 WL 2074011, at *11 (E.D. Ky. May 13, 2008). A non-treating source is an acceptable medical source who has examined the claimant but does not have an ongoing treatment relationship with him or her, while a non-examining source has provided medical or other opinion evidence in the case without examining the claimant. *Id.*

Plaintiff takes issue with the ALJ's alleged failure to accord controlling weight to the medical opinion testimony of Dr. Kiefer and Dr. Golden, both treating sources, and

the ALJ's designation of great weight to the medical opinion testimony of Dr. Conger and Dr. Perritt, both non-examining sources. (Doc. # 11-1). The Court will address the ALJ's assessment of the medical opinion evidence of the treating sources and non-examining sources in turn.

### a. Treating Sources

A treating source's opinion is entitled to controlling weight if it is "'well supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)). If a treating source's opinion is not entitled to controlling weight, the ALJ must consider the following factors in order to determine how much weight to give the opinion: (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; and (5) the specialization of the treating source. *Id.* The ALJ must provide "good reasons" for giving less than controlling weight to a treating source's opinion. 20 C.F.R. § 404.1527(c)(2). Specifically, a decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996).

The "treating physician rule" only applies to *medical* opinions. While a medical expert may opine "on issues such as whether [claimant's] impairment(s) meets or equals

the requirements of any impairment(s) in the Listing of Impairments," as well as claimant's residual functional capacity or the application of vocational factors, such opinions are not entitled to controlling weight. *See* 20 C.F.R. § 404.1527(d)(2) (stating that "the final responsibility for deciding these issues is reserved to the Commissioner"). "Although the ALJ may not entirely ignore such an opinion, his decision need only explain the consideration given to the treating source's opinion." *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 493 (6th Cir. 2010) (internal citations omitted).

The Plaintiff argues that the ALJ erred by failing to give Dr. Kiefer's and Dr. Golden's opinions, as treating sources, controlling weight. (Doc. #11-1). Plaintiff further alleges that had the ALJ given Dr. Kiefer's and Dr. Golden's opinions controlling weight and included the limitations they found in the RFC, there would be no jobs in the economy that Plaintiff could perform. (Doc. # 11-1). Despite Plaintiff's claims, the ALJ thoroughly and appropriately considered the opinions of Dr. Kiefer and Dr. Golden.

### i. Dr. Kiefer

The ALJ gave only partial weight to the August 27, 2013 opinion evidence of Dr. Kiefer, Plaintiff's neurosurgeon. (Tr. 22). On that date, Dr. Kiefer authorized Plaintiff to return to work provided that she not lift more than fifteen pounds and refrain from repetitive bending, twisting, lifting, and uninterrupted sitting or standing for 20 minutes or longer without a change of position. (Tr. 329). The ALJ explained that the August 27, 2013 evidence should be given only partial weight because:

> Dr. Kiefer later found no nerve root compromise on December 3, 2013. At that time, Dr. Kiefer stated that the claimant had reached maximum medical improvement and that treatment would be symptomatic and without surgical solution. Dr. Kiefer's lifting restriction to a maximum of 15 pounds was rendered at a time when he believed there was possibility of nerve root compromise.

10

(Tr. 22). Furthermore, the ALJ noted that the limitations Dr. Kiefer suggested were very similar to the light exertional level in the RFC. *Id.* The RFC states that Plaintiff was capable of doing light exertional level work as defined by 20 C.F.R. § 404.1567 (b) "except that she can occasionally climb ladders, ropes, and scaffolds. She can frequently stoop and frequently crawl. She should never be exposed to unprotected heights or moving mechanical parts. She can occasionally be exposed to humidity and wetness and extreme cold." (Tr. 19). The ALJ explained that Dr. Kiefer's August 27, 2013 opinion deserved only partial weight because it was not consistent with or supported by later medical findings, including Dr. Kiefer's own. (Tr. 22). The ALJ detailed his reasons for giving partial weight to Dr. Kiefer's August 27, 2013 evidence in accordance with 20 C.F.R. § 404.1527(c) and sufficiently considered and incorporated the Plaintiff's limitations established by Dr. Kiefer into the RFC. Thus, the Court finds no error in this portion of the ALJ's analysis.

      **ii.**      **Dr. Golden**

The ALJ gave little weight to the August 27, 2015 medical source statement given by Dr. Golden, Plaintiff's primary care provider. (Tr. 22). In the August 27, 2015 statement, Dr. Golden assigns several physical and mental limitations to Plaintiff, including: inability to lift or carry over 10 pounds, bend, squat, climb, sit for more than two hours total in an eight- hour workday, stand for more than one hour total in an eight-hour workday, walk for more than one hour in an eight-hour workday, and deal with highly stressful environments. (Tr. 485-87). The ALJ explained he gave the August 27, 2015 statement little weight because:

> The limitations cited in this report are inconsistent with the objective evidence of record including Dr. Golden's own treatment notes. It also does not help the credibility of this report by Dr. Golden that it is the product of a pre-printed form questionnaire, submitted to him by the claimant's attorney, which includes a number of leading questions and similar inducements.

(Tr. 22). While Dr. Golden at times reported that Plaintiff suffered from depressive symptoms and ongoing complaints of pain, his treatment notes consistently state that Plaintiff's gait, balance, and coordination remained within normal limits. (Tr. 372, 459, 471). The ALJ explained why he refused to give Dr. Golden's August 27, 2015 medical statement controlling weight, citing factors required by 20 C.F.R. §§ 404.1527(c) - 416.927(c), including inconsistencies between Dr. Golden's August 27, 2015 statement and his own treatment notes, lack of support in the overall record, and the source and formatting of the statement. (Tr. 22). The ALJ satisfied the "treating physician" rule and its "good reasons" requirement. Accordingly, the ALJ engaged in the proper analysis and reached a conclusion that is supported by substantial evidence. The Court finds no error in the ALJ's treatment of Dr. Golden's opinion.

### b. Non-examining Sources

Plaintiff also argues that the opinions of non-examining State agency psychologists Dr. Conger, Ph.D., and Dr. Perritt, Ph.D., should be given less weight than treating sources and that "[f]or the ALJ to rely on non-examining physicians, when the examining physicians found restrictions that would be disabling, is clearly error." (Doc. # 11-1 at 9). The ALJ uses the same five factors for weighing the opinions of non-examining sources as he does for discounting treating sources' opinions. 20 C.F.R. § 404.1527(c). While treating sources are generally given more deference than non-examining sources, "[i]n appropriate circumstances, opinions from State agency medical and psychological

consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources." SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996). Despite Plaintiff's claims, the ALJ provided substantial evidence for giving less weight to several treating sources' opinions, as discussed above, and provided sufficient reasoning for giving great weight to the opinion evidence of non-examining sources.

If the ALJ is to give the non-examining sources more weight than treating sources, "the record must give some indication that the ALJ subjected [the non-examining source's] opinion to scrutiny." *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 632 (6th Cir. 2016). Although the ALJ did not explicitly state his reasons for assigning great weight to the opinions of Dr. Conger and Dr. Perritt, there is evidence he subjected their opinions to some scrutiny because the ALJ disagreed with portions of their assessment (specifically, Plaintiff's depression). (Tr. 18). Instead, the ALJ chose to rely on the opinions of Plaintiff's treating source, Dr. Golden, to conclude that Plaintiff's depression was a non-severe medically diagnosed impairment. *Id.* Even if the ALJ could have more clearly stated his reasons for giving Dr. Conger's and Dr. Perritt's opinions great weight, the lack of explicit reasoning "is not fatal because their opinions are consistent with other record evidence [and] the inconsistent treating source opinions were properly discredited." *Kepke,* 636 F. App'x at 633. Dr. Conger's and Dr. Perritt's opinions are based on a review of medical opinion evidence from several of Plaintiff's treating sources and are consistent with the opinions of her treating physicians, particularly Dr. Kiefer and Dr. Vascello. (Tr. 66-85; 87-111; 331; 337-60). Because the ALJ demonstrated that he scrutinized the opinion evidence of Dr. Conger and Dr. Perritt and their opinions are

13

consistent with other parts of the record, the ALJ's decision to give Dr. Conger's and Dr. Perritt's opinions great weight was reasonable and is supported by substantial evidence.[2] Thus, the ALJ did not err in weighing the medical opinion testimony.

### 3. *The ALJ did not err in assessing the totality of the record.*

Finally, Plaintiff generally complains that the ALJ failed to account for the entirety of the record when making his decision. Plaintiff claims that the ALJ's evaluation "left out almost all evidence that supported [Plaintiff]." (Doc. # 11-1, p. 5). Specifically, Plaintiff claims that the ALJ did not properly evaluate her mental health issues and avoided consideration of the medical evidence and limitations given by Dr. Kiefer and Dr. Golden. (Doc. # 11-1). An examination of the ALJ's decision disproves both claims.

While the substantial evidence standard of review is "quite deferential to the finding of the Commissioner," the ALJ must still make all determinations "based upon the record in its entirety." *Rogers*, 486 F.3d at 249. Assessing the record as a whole "helps to ensure that the focus in evaluating an application does not unduly concentrate on one single aspect of the claimant's history, if that one aspect does not reasonably portray the reality of the claimant's circumstances." *Id.* If the ALJ examined the record as a whole and the ALJ's decision is supported by substantial evidence, then this Court must affirm the ALJ's decision, even if the Court might have decided the case differently. *Listenbee*, 846 F.2d at 349.

---

[2] Although Plaintiff did not directly challenge the weight given to the findings and opinions of State agency physician Dr. Brown, MD., the Court also finds that the ALJ did not err in assigning Dr. Brown's opinions great weight. Tr. 23. The ALJ gave a sufficient explanation to support his decision that Dr. Brown's opinions deserved great weight. *Id.* The ALJ explained that Dr. Brown's opinions were "consistent with the evidence as a whole including the findings of treating neurosurgeon Dr. Kiefer and pain management specialist Dr. Vascello who noted [improvement] in pain and reported symptoms with treatment especially spinal cord implantation." *Id.*

14

Plaintiff first alleges that the ALJ "did not properly evaluate [her] mental health issues" and that her depression should have been listed as a severe impairment. (Doc. # 11-1 at 4). However, the ALJ provided ample discussion of Plaintiff's mental health. (Tr. 17-18). The ALJ acknowledged that Dr. Golden's treatment notes documented a diagnosis of depression with anxiety, that Plaintiff herself had reported suffering from depression caused by her pain, and that Plaintiff testified that the reason she has not sought mental health treatment was due to insurance issues. (Tr. 17). Then, the ALJ gave several reasons for nevertheless categorizing Plaintiff's depression as non-severe. *Id.* The ALJ explained that Plaintiff never "attempted to obtain low cost medications, samples, or assistance from drug companies." *Id.* Further, the ALJ explained that Dr. Golden's treatment notes do not document or support his conclusion that Plaintiff "experienced depression with anxiety that inhibited the ability to deal with highly stressful environments." *Id.* Finally the ALJ described that:

> There is no evidence that the claimant has sought, received, or been referred for more specialized care from a psychiatrist, psychologist, or psychotherapist. She has never received mental health counseling or therapy or been psychiatrically hospitalized. Treating sources have consistently noted that the claimant has presented fully oriented with intact memory, intact attention, intact language, and intact cognition.

*Id.* The mere existence of evidence that supports Plaintiff's claim is not enough to reverse the ALJ's decision, which is supported by substantial evidence drawn from the entire record. *Smith*, 99 F.3d at 781-82. Because the ALJ thoroughly considered the record when determining that Plaintiff's depression was non-severe and supported his determination with substantial evidence, the Court finds no error.[3]

---

[3] Moreover, the severity inquiry at Step Two is "a '*de minimis* hurdle' in the disability determination process," meant to screen out totally frivolous claims. *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988) (internal citations omitted); *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x

Plaintiff's complaint that the ALJ failed to properly assess the evidence of Dr. Kiefer and Dr. Golden is similarly misguided. Throughout the decision, the ALJ considered the evidence of Dr. Kiefer and Dr. Golden. The ALJ provided an extensive summary of Plaintiff's evaluations by both Dr. Kiefer and Dr. Golden when the ALJ determined Plaintiff's RFC. (Tr. 19-22). The ALJ documented many meetings Plaintiff had with Dr. Kiefer and Dr. Golden, including meetings where the doctors reported Plaintiff's condition worsened and meetings when the doctors reported Plaintiff's condition improved. *Id.* That the ALJ chose to give only partial weight and little weight to portions of Dr. Kiefer's and Dr. Golden's opinions does not support a conclusion that the ALJ avoided consideration of Dr. Kiefer's and Dr. Golden's testimony. Rather, it shows that the ALJ specifically examined the opinions of Dr. Kiefer and Dr. Golden, as previously described in Part II(C)(2)(a). Even if there is evidence that supports Plaintiff's position, the ALJ's decision will be upheld as long as it is supported by substantial evidence. *Her*, 203 F.3d at 389-90. Here, the ALJ has considered the record as a whole and his decision is supported by substantial evidence. The Court finds no error in the scope of the ALJ's analysis.

---

425, 428 (6th Cir. 2007). If the ALJ finds at least one of the claimant's alleged impairments is severe in nature, the claim survives the Step Two screening process. 20 C.F.R. §404.1520(a)(4). Because the Regulations instruct the ALJ to consider both severe and non-severe impairments in the remaining steps of the disability determination analysis, any impairment erroneously labeled as "non-severe" will not be ignored altogether. 20 C.F.R. § 404.1545(a)(2). For this reason, the Sixth Circuit has consistently held that an ALJ does not commit reversible error when he or she decides that some of claimant's impairments are not severe, but finds that other impairments are severe and proceeds with his or her analysis. *See, e.g., Maziarz v. Sec'y Health & Human Serv.*, 837 F.2d 240, 244 (6th Cir. 1987). Here, having determined that Plaintiff suffered from severe impairments, the ALJ had to consider both severe and non-severe impairments, including Plaintiff's mental limitations, in completing the disability determination analysis. (Tr. 22-23). Thus, even assuming there was an error at Step Two of the analysis, it would be harmless.

## III. CONCLUSION

For the reasons stated herein, the Court concludes that the ALJ's finding that Plaintiff was not disabled for purposes of the Social Security Act was supported by substantial evidence.

Accordingly, for the reasons stated herein, **IT IS ORDERED** as follows:

(1) The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgement (Doc. # 11) is hereby **DENIED**;

(3) Defendant's Motion for Summary Judgement (Doc. # 13) is hereby **GRANTED**; and

(4) A Judgement in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 12th of June, 2017.



Signed By:
*David L. Bunning* DB
United States District Judge

K:\DATA\SocialSecurity\MOOs\London\16-260 Duncan MOO.docx

17